IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

---

TAMI M. BUSCH,

    Plaintiff,

vs.                                      Civil No. 06-390 WJ/LAM

JAY W. FORBES, in his personal
capacity and acting under Color of
State Law, GARY CLINGMAN, in
his personal capacity and acting
under Color of State Law,

    Defendants.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT CLINGMAN'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court pursuant to Defendant Gary L. Clingman's Motion for Summary Judgment (Doc. 43). Having reviewed the submissions of the parties and being fully advised on the relevant law, I conclude the motion is well taken in its entirety and shall accordingly be granted.

**FACTUAL BACKGROUND**

On November 7, 2002, a seven count criminal information was filed against the Plaintiff Tami M. Busch in New Mexico state district court. She was charged with two counts of trafficking in a controlled substance, to wit: cocaine, in violation of N.M. Stat. Ann. 1978 § 30-31-20; and five counts of distribution of a controlled substance, to wit: methamphetamine, in

violation of N.M. Stat. Ann. 1978 § 30-31-22A(2).  The two cocaine charges were second degree felonies each punishable by a maximum term of imprisonment of nine years and a $10,000 fine.  The five methamphetamine charges were third degree felonies each punishable by a maximum term of imprisonment of three years and a $5,000 fine.

An affidavit from New Mexico State Police undercover Agent Nick Jimenez provided the factual basis for the charges against Ms. Busch.  Undercover purchases of cocaine were made from Ms. Busch on two separate occasions and undercover purchases of methamphetamine were made from Ms. Busch on five separate occasions.   All purchases were made from Ms. Busch's photography business located next to Attorney Max Proctor's law office.  At the time, Ms. Busch and Mr. Proctor were living together but they are now married.

Ms. Busch was arrested on the charges on August 13, 2002.  She was initially represented by Mr. Proctor.  On November 7, 2002, Ms. Busch, through Mr. Proctor acting as counsel, waived a preliminary hearing in the Lea County Magistrate Court and consented to be bound over to the Fifth Judicial District Court.  On November 18, 2002, Ms. Busch, through Mr. Proctor, waived arraignment and entered pleas of not guilty to all of the charges.  The waiver of arraignment and not guilty pleas were entered before Defendant Gary Clingman, Fifth Judicial District.[1]  Judge and resident of Lea County.  On November 19, 2002, Judge Clingman entered a Pretrial Scheduling Order setting a trial for February 2003.

On November 26, 2002, Ms. Busch, through Mr. Proctor, exercised her right under N.M. Stat. Ann. 1978 § 38-3-9 and NMRA 5-106 to excuse Judge Clingman from presiding over her case.  Section 38-3-9 provides that, "[a]fter the exercise of a peremptory challenge, that district

---

[1]New Mexico's Fifth Judicial District includes Lea, Eddy and Chaves Counties.

judge shall proceed no further." On November 27, 2002, Ms. Busch's criminal case was randomly reassigned to Fifth Judicial District Judge William A. McBee, a resident judge in Lea County.

There is conflicting evidence regarding the relationship between Judge McBee and Max Proctor. It is undisputed that Judge McBee and Mr. Proctor, having both grown up in Hobbs, New Mexico, were in the same high school graduation class and had known one another since grade school. Judge McBee, during disciplinary proceedings before the New Mexico Judicial Standards Commission,[2] stipulated that his involvement in Ms. Busch's criminal case gave the appearance of impropriety and "could create in reasonable minds a perception that his ability to carry out his judicial responsibilities with integrity and impartiality was impaired because of his personal relationship with Max Proctor." Def.'s Ex. 10. In contrast, Judge McBee testified in a deposition taken for this case that he and Mr. Proctor did not socialize much when they returned to Hobbs after college. They would see each other at high school reunions, occasionally run into one another at the same restaurants, and would sometimes have professional dealings with one another when both were in private law practice. Mr. Proctor did come to Judge McBee's home during a "Millenium Reunion" when Judge McBee hosted the events for the Class of '67, and both are members of the local country club. Judge McBee testified that in the past, he only played golf with Mr. Proctor during golf tournaments when they were randomly paired with one another and when local attorneys would gather for golf outings.

---

[2]The Judicial Standards Commission is a body created by the Constitution of the State of New Mexico, Art. 6 § 32. The duties of the Commission include investigating charges, complaints, and allegations of willful judicial misconduct; holding hearings as necessary regarding such charges, complaints and allegations; and recommending to the New Mexico Supreme Court the discipline, removal or retirement of a justice, judge or magistrate based on findings made through investigation and any hearing. N.M. Stat. Ann. 1978 § 34-10-2.1.

On December 3, 2002, Judge McBee entered a new Pretrial Scheduling Order in Ms. Busch's criminal case moving her trial to April of 2003. On February 10, 2003, Mr. Proctor filed a motion for a conditional discharge for Ms. Busch. The facts do not indicate whether or how Judge McBee ruled on this motion. On March 26, 2003, an Amended Criminal Information was filed in Ms. Busch's case charging her with essentially the same crimes. On April 3, 2003, Mr. Proctor moved to withdraw as Ms. Busch's counsel stating that he may be called as a witness on her behalf. Attorney Jon Fredlund was substituted as Ms. Busch's counsel. An order permitting Mr. Proctor's withdrawal was signed on April 9, 2003 by another judge, Fifth Judicial District Judge Don Maddox, also a resident judge in Lea County. On April 15, 2003, Ms. Busch entered pleas of no contest to charges in the Amended Criminal Information.

On May 12, 2003, Judge McBee held a sentencing hearing in Ms. Busch's criminal case. The probation department had recommended a prison sentence for Ms. Busch given the seven counts of drug trafficking to which she had pled no contest. Judge McBee, on the record, stated that he would consider Ms. Busch as the first criminal defendant to be sentenced to the newly created Lea County Drug Court Program. He continued Ms. Busch's sentencing to a later date because Drug Court was not an available sentencing alternative for criminal defendants at the time. Prior to this hearing, nobody had objected to Judge McBee presiding over Ms. Busch's criminal case.

In the spring of 2003, Judge Clingman became aware through Judge Maddox that Judge McBee was engaging in the practice of actively participating in plea negotiations in criminal cases, sometimes on an ex parte basis. Judge Maddox also made Judge Clingman aware of Judge McBee's stated intention to sentence Ms. Busch to Drug Court. Based on this information, Judge Clingman called Fifth Judicial District Attorney Thomas Rutledge to inquire

4

if Ms. Busch's pleas were entered pursuant to an agreement with the State. Mr. Rutledge advised Judge Clingman that there was no agreement with the State, and that Ms. Busch's pleas were "open."

In early June 2003, trial statistics came out for the Lea County judges. The statistics revealed that Judge McBee had one criminal jury trial during 2001 while each of the other district judges in Lea County (Judges Clingman and Maddox) presided over more than 20 criminal jury trials during 2001. Further inquiry revealed that Judge McBee had many matters under advisement dating back to the summer of 2002. Judge Clingman also observed that Judge McBee was frequently absent from the Lea County Courthouse. According to Judge Clingman, he discussed his belief with several people[3] that Judge McBee should not preside over Ms. Busch's criminal case.

After discussing these issues with Judge Maddox, Judge Clingman wrote a letter dated July 3, 2003 to Fifth Judicial District Judge Jay W. Forbes who was Chief Judge for the Fifth Judicial District at that time.[4] In the letter, Judge Clingman raised concerns about Judge McBee's backlog of cases, his frequent absence from the courthouse, his practice of active

---

[3]Ms. Busch attempts to create a genuine issue of disputed fact by contradicting Judge Clingman's testimony with regard to the specific persons with whom Judge Clingman spoke. The specific persons to whom Judge Clingman spoke is not a material fact that affects the outcome of this motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (a fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit); Hardy v. S.F. Phosphates Ltd. Co., 185 F.3d 1076, 1079 (10th Cir. 1999) (same). The identity of persons to whom Judge Clingman may or may not have spoken has nothing to do with whether Judge Clingman is entitled to judicial immunity or whether his conduct deprived Ms. Busch of any constitutional right.

[4]Judge Forbes was a resident Judge in Eddy County. Subsequent to the events in this case, Judge Forbes retired from the bench. He was named as a Defendant in this case, and, by Order filed October 31, 2006, all claims against him were dismissed on the basis of absolute judicial immunity (Doc. 33).

participation, sometimes ex parte, in plea negotiations and the fact that he presided over only one criminal trial in the past year.  He also addressed Judge McBee's involvement in Ms. Busch's criminal case and his own understanding from various rumors that there was a friendship between Mr. Proctor and Judge McBee.  In closing the letter, Judge Clingman expressed his concern that the specific actions of Judge McBee outlined in the letter might implicate Judge McBee's ethical obligations as a judge.

    Judge Clingman hand-delivered the letter to Chief Judge Forbes on July 3, 2003 and discussed the letter with Chief Judge Forbes at that time.[5]  Sometime thereafter, Chief Judge Forbes met with Judge McBee and showed him the letter from Judge Clingman.  He also advised Judge McBee that he had spoken with New Mexico Supreme Court Justice Petra Maes about the matter.  Chief Judge Forbes expressed concerns that Judge McBee's involvement in Ms. Busch's case might implicate ethical standards and advised Judge McBee to recuse himself in order to avoid the appearance of impropriety.  Judge McBee acknowledged these concerns and agreed to recuse himself from Ms. Busch's criminal case.  Judge Forbes testified in his deposition that, had the allegations in Judge Clingman's letter been incorrect or untruthful, he would have discovered

---

[5]Judge Clingman's affidavit and statement of undisputed material facts indicate that Judge Maddox was present when the letter was delivered to Chief Judge Forbes.  Plaintiff disputes that Judge Maddox was present and provides Judge Maddox's deposition testimony that he does not believe he accompanied Judge Clingman to deliver the letter and does not believe he had a conversation with Chief Judge Forbes regarding the letter.  This Court  must consider the facts in a light most favorable to Plaintiff.  Thus, the Court will assume that Judge Maddox was not involved in the delivery of the letter and was not present when Judge Clingman discussed the letter with Chief Judge Forbes.  However, the presence or lack thereof of Judge Maddox is not a material fact as it has no effect on the outcome of this motion.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (a fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit); Hardy v. S.F. Phosphates Ltd. Co., 185 F.3d 1076, 1079 (10th Cir. 1999) (same).

this when speaking with Judge McBee and would not have asked Judge McBee to voluntarily recuse himself from Ms. Busch's criminal case.

On July 30, 2003, a Notice of Judge Assignment was issued by the Fifth Judicial District County of Lea Clerk's Office reassigning Ms. Busch's case from Judge McBee to Fifth Judicial District Judge William P. Lynch, a resident judge in Chaves County. At the time of the reassignment, Judge McBee had not formally entered his recusal. Judge McBee signed and filed an Order of Recusal the following day. On August 6, 2003, the Clerk mailed to the parties in Ms. Busch's criminal case the Notice of Hearing to appear before Judge Lynch on October 6, 2003 for sentencing. During the hearing, Mr. Fredlund informed Judge Lynch of Judge McBee's expressed sentencing intentions made at the May 12, 2003 sentencing hearing. Judge Lynch stated that he was not bound by Judge McBee's statements regarding Ms. Busch's sentencing. This surprised Mr. Fredlund and, after further discussion on the record, Judge Lynch continued the hearing so that Mr. Fredlund could consider the possibility of Ms. Busch withdrawing her no contest plea.

Ms. Busch subsequently retained her current counsel, Attorney Dick Blenden, to represent her in the criminal case. Mr. Blenden contacted Judge McBee and asked whether he would consider revoking his recusal in order to preside again over Ms. Busch's criminal case. Judge McBee agreed to once again become the presiding judge.

On October 31, 2003, Ms. Busch again appeared for sentencing in front of Judge Lynch. Attorney Blenden asserted that the assignment of Ms. Busch's criminal case to Judge Lynch was improper under the Local Rules for the Fifth Judicial District Court because Judge McBee had been pressured to recuse himself. Moreover, Mr. Blenden argued that there is no authority under New Mexico rules or statutes for one judge to have another removed from a case. Additionally,

7

Mr. Blenden noted that Chief Judge Forbes had instructed the Court Clerk to reassign Ms. Busch's case to Judge Lynch. In response to Mr. Blenden's arguments, the prosecuting attorney indicated that the State took no position with regard to the issue of judicial assignment but agreed that Judge Lynch had to determine his jurisdiction over Ms. Busch's case before proceeding with sentencing. The Prosecutor then expressed concern over the appearance created by the unusual circumstances relating to the assignment of a presiding judge.

On November 5, 2003, Judge Lynch entered an Order of Recusal recusing himself from Ms. Busch's criminal case. Judge Lynch carefully explained in the Order his reasons for recusal. He concluded that Judge McBee had not completed sentencing on May 12, 2003, and that there was nothing sinister in Judge Clingman's inquiry into Ms. Busch's case after he was excused. Judge Lynch expressed concerns that there was much information discussed by counsel regarding judicial intentions and contacts that was not part of any record of proceedings. In reaching the merits of Ms. Busch's request for recusal, Judge Lynch agreed that his assignment to Ms. Busch's case had not complied with NMRA 5-105 or the Local Rules for the Fifth Judicial District Court because application of these rules would have resulted in the case being assigned to Judge Maddox.[6] Accordingly, Judge Lynch recused himself from Ms. Busch's case.

---

[6] Under NMRA 5-105(B), if a district judge recuses himself and the parties do not stipulate to a particular district judge, the clerk of the district court must randomly assign the case to another district judge. Under this rule, the clerk of court for the Fifth Judicial District Court could randomly assign a case to any other district judge within the Fifth Judicial District. However, under the local rules of the Fifth Judicial District ("LR5"), if a district judge recuses himself, the clerk must randomly reassign the case to a district judge within the same county. LR5-104. Only if there is no available judge within the county will the clerk randomly reassign the case to a district judge in another county within the Fifth Judicial District. Id. Judges Clingman, McBee and Maddox were the district judges within Lea County. Because Judge Clingman had previously been excused, when Judge McBee recused himself, the case should have been reassigned under LR5-104 to Judge Maddox as the only remaining district judge within Lea County. Judge Lynch, a Fifth Judicial District Judge in Chaves County, should not

On November 6, 2003, the District Court Clerk reassigned Ms. Busch's criminal case to Judge Maddox.  On November 12, 2003, Mr. Blenden and the State stipulated in writing to have Judge McBee hear Ms. Busch's criminal case.  On November 13, 2003, Judge Maddox filed a recusal in Ms. Busch's case, the case was reassigned to Fifth Judicial District Judge Charles Currier by the Clerk, but in light of the stipulation, Judge Currier indicated by letter filed on December 11, 2003 that he would take no action in the case.  On November 17, 2003, Judge McBee filed a revocation of his recusal.  A sentencing hearing before Judge McBee was set for February 2, 2004, and Judge McBee sentenced Ms. Busch to the Lea County Drug Court Program as an alternative to incarceration.

On July 7, 2004, the Judicial Standards Commission of the State of New Mexico ("JSC") issued a Notice of Formal Proceedings, Notice of Trial and Pretrial Scheduling Order to Judge McBee.  These proceedings culminated in a Stipulation Agreement and Consent to Discipline that was accepted by and filed with the JSC on October 17, 2005.  This stipulation was ultimately accepted and adopted by the New Mexico Supreme Court and published as In re Honorable William A. McBee, 134 P.3d 769 (N.M. 2006).  As noted above, part of the stipulation adopted by the court was Judge McBee's admission that presiding over Ms. Busch's case when it was initially assigned to him "could give, at a minimum, the appearance to a reasonable person that [he] was not impartial in that matter on the basis of his personal relationship with Max Proctor, boyfriend to, and attorney for, Ms. Busch, who subsequently became Ms. Busch's husband."[7]  Id. at 770.  The Supreme Court recited the facts regarding the

---

have been assigned the case unless there was no available resident district judge in Lea County.

[7]Ms. Busch asserts that the stipulation and New Mexico Supreme Court opinion made no finding that Judge McBee's initial entry into Ms. Busch's criminal case was ever unethical or

excusals, recusals and reassignments of Ms. Busch's criminal case within the Fifth Judicial District. Id. at 770-71. After noting that Judge McBee revoked his earlier recusal and ultimately exercised jurisdiction over Ms. Busch's case, the court noted Judge McBee's stipulation and admission that revocation of his recusal "gave, at a minimum, the appearance to a reasonable person that his integrity and impartiality were impaired." Id. at 771. In discussing Judge McBee's conduct, the Supreme Court clearly stated that Judge McBee should have recused himself from Ms. Busch's criminal case at the outset. Id.

On May 10, 2006, Ms. Busch filed the present suit against Judge Forbes, Judge Clingman and two probation officers. In Count II, Ms. Busch alleges that Judge Clingman violated her rights under the Fourteenth Amendment and 42 U.S.C. § 1983 by seeking Chief Judge Forbes' assistance in having Judge McBee removed from presiding over her criminal case and by contacting the District Attorney's office, probation and parole officers and other witnesses to inquire about Ms. Busch's plea and to influence her sentence. Ms. Busch alleges that this conduct was unlawful because Judge Clingman had been excused from her case and had no authority to attempt to influence the outcome of her case after it was reassigned to Judge McBee. In Count III, Ms. Busch alleges that Judge Clingman and Chief Judge Forbes conspired to violate her civil rights by attempting to remove Judge McBee from her criminal case and influence her sentence. Ms. Busch clarifies her claims in her responses to discovery by alleging that she was deprived of a property interest in the form of the expenditure of attorney's fees to

---

wrong. She points to page 7 of the Stipulation where Judge McBee did acknowledge that his revocation of his recusal gave, at a minimum, the appearance that his integrity and impartiality was impaired. This contention ignores paragraph 5 of the Supreme Court Opinion and paragraph 1(c) of the Stipulation which address Judge McBee's initial decision to preside over Ms. Busch's criminal case, and states that at a minimum, Judge McBee presiding over Ms. Busch's case gave the appearance that he was not impartial.

fight the recusal of Judge McBee and subsequent reassignment to Judge Lynch. Judge Clingman moves for summary judgment with respect to Ms. Busch's claims on the basis of absolute judicial immunity, qualified immunity, and on the basis that Ms. Busch failed to show any constitutional injury.

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Worrell v. Henry, 219 F.3d 1197, 1204 (10th Cir. 2000). The burden of showing an absence of a genuine issue of material fact falls upon the moving party. Adler v Wal-Mart Store, Inc., 144 F.3d 664, 670 (10th Cir. 1998). However, when the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by pointing out to the court the absence of evidence to support the nonmoving party's case. Celotex Corp. v Catrett, 477 U.S. 317, 322-23 (1986); Adler, 144 F.3d at 671. The nonmoving party must then go beyond the pleadings to set forth specific facts showing that there is a genuine issue for trial sufficient to support a verdict for the nonmovant. Anderson v Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). In ruling on a motion for summary judgment, a court does not weigh the evidence, but determines whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Sierra Club v. El Paso Gold Mines, Inc., 421 F.3d 1133, 1150 (10th Cir. 2005). In making this determination, the court must construe all the facts in the record and reasonable inferences that can be drawn from those facts in a light most favorable to the nonmoving party. Worrell, 219 F.3d at 1204.

**DISCUSSION**

I.    JUDGE CLINGMAN IS ENTITLED TO SUMMARY JUDGMENT ON THE BASIS OF ABSOLUTE JUDICIAL IMMUNITY

Judges are immune from damages for civil liability for acts taken in their judicial capacity. Stump v. Sparkman, 435 U.S. 349 (1978); Lundahl v. Zimmer, 296 F.3d 936, 939 (10th Cir. 2002). A judge acting in a judicial capacity is entitled to absolute immunity regardless of the motive underlying his actions and regardless of the degree of error or harm caused by the actions. Clevenger v. Saxoner, 474 U.S. 193, 199-200 (1985). There are two exceptions to judicial immunity. First, a judge is not immune for actions that are judicial in nature but are taken in the clear absence of all jurisdiction. Stump, 435 U.S. at 356-57. Second, a judge does not have judicial immunity for actions that are not judicial in nature. Forrester v. White, 484 U.S. 219 (1988).

Judge Clingman urges that his conduct in contacting the District Attorney and in writing a letter to Chief Judge Forbes expressing concerns that Judge McBee should not preside over Ms. Busch's criminal case were judicial acts for which he is entitled to absolute judicial immunity. Plaintiff counters that Judge Clingman is not entitled to absolute judicial immunity because his actions were not judicial and he acted in the absence of all jurisdiction.[8]

    A.    Judge Clingman Did Not Act in the Absence of All Jurisdiction

In determining the scope of a judge's jurisdiction, it "must be construed broadly where the issue is the immunity of the judge." Stump, 435 U.S. at 356. Plaintiff appears to argue that Judge Clingman acted in the clear absence of all jurisdiction when he made contact with others

---

[8]Ms. Busch somewhat jumbles the concepts of "judicial acts" and "absence of jurisdiction" by stating that the issue in this case is whether Judge Clingman's conduct was a judicial act or an act outside his jurisdiction.

12

regarding Ms. Busch's criminal case because N.M. Stat. Ann. 1978 § 38-3-9 required him to proceed no further in the case after he was excused as the presiding judge.  Plaintiff argues that, by contacting the District Attorney and Chief Judge Forbes regarding Ms. Busch's case, Judge Clingman tried to exercise control over the case in contravention of the New Mexico statute requiring that he proceed no further.

Judge Clingman's conduct cannot be construed as further proceedings in Ms. Busch's case.  He did not enter orders, conduct hearings, make any decisions or take any other action directly exercising authority or jurisdiction over Ms. Busch's case.  Thus, Judge Clingman's actions cannot be construed as conduct in the clear absence of all jurisdiction.

> B.  Judge Clingman Engaged in Judicial Acts When He Contacted the District Attorney and When He Wrote a Letter to Chief Judge Forbes

In determining whether a particular act is "judicial," a court considers (1) whether it is a function normally performed by a judge, and (2) whether the parties dealt with the judge in his judicial capacity.  Stump, 435 U.S. at 362.  As the United State Supreme Court noted, the application of judicial immunity to paradigmatic judicial acts involved in resolving disputes between parties who invoke the jurisdiction of the court has not been a matter of great controversy.  Forrester, 484 U.S. at 227.  However, there has been controversy when drawing the line between non-paradigmatic acts that are nonetheless judicial acts for purposes of immunity and those that are non-judicial acts but merely performed by a judge.  Id.  While actions taken by a judge that do not involve an adjudication between parties are less likely to be judicial acts, Cameron v. Seitz, 38 F.3d 264, 271 (6th Cir. 1994), "the applicability of judicial immunity is not limited to acts which occur within the confines of the courtroom, and consequently, acts

13

performed outside of the courtroom are not, ipso facto, non-judicial acts," Barrett v. Harrington, 130 F.3d 246, 260 (6th Cir. 1997).

In Barrett, Plaintiff Frank Barrett brought a § 1983 claim against Tennessee State Judge Nancy Harrington who had presided over a municipal code enforcement claim against him. The plaintiff claimed that the judge falsely accused him of stalking her in retaliation for his efforts to reveal inappropriate conduct she allegedly committed as an elected official. The particular conduct at issue involved letters written by the judge to state and federal prosecutors requesting they investigate plaintiff because he was attempting to obstruct justice by harassing her and her family. The Sixth Circuit concluded that the judge's conduct was judicial in spite of it being unrelated to resolving a case between parties because the judge was engaged in an act to protect the integrity of the judicial decision-making process. Barrett, 130 F.3d at 259.

In reaching its decision in Barrett, the Sixth Circuit relied on a Tenth Circuit case, Martinez v. Winner, 771 F.2d 424 (10th Cir. 1985) ("Martinez I"). The Tenth Circuit vacated its original decision in Martinez I on grounds that the controversy was moot, and specifically concluded that the decision had no stare decisis effect. See Martinez v. Winner, 800 F.2d 230 (10th Cir. 1986). However, the analysis in Martinez I is still instructive with regard to distinguishing judicial from non-judicial acts for purposes of absolute judicial immunity. In Martinez I, Mr. Martinez alleged that Judge Winner, then Chief Judge of the United States District Court for the District of Colorado, committed civil rights violations by assigning himself, in contravention of local practice and rules, to preside at Martinez's criminal trial. According to Martinez, Judge Winner held a secret meeting in his hotel room during the trial with two Assistant United States Attorneys, three Deputy United States Marshals, his own secretary and several prosecution witnesses. Neither Martinez nor his attorney were informed of

14

this meeting. During the meeting, Judge Winner agreed to declare a mistrial in the case to allow the prosecution to retry the case in front of a new jury and discussed strategies for obtaining a mistrial without implicating double jeopardy.[9] Finally, Martinez alleged that Judge Winner wrote a letter to the United States Department of Justice with copies sent to other judges, the media, and various law enforcement agencies accusing Martinez of being a catalyst for bringing together four terrorist groups.

The Tenth Circuit held that Judge Winner was entitled to judicial immunity for all of the claims alleged against him. Martinez I, 771 F.2d at 436. In addressing Judge Winner's assignment of Martinez's criminal case to himself rather than by the random process provided for in local rules, the Tenth Circuit concluded that this act, while administrative in the sense that it did not concern the adjudication of a controversy between parties, was a judicial function in part because the responsibility for case assignments fell to Judge Winner by statute. Id. at 434. With regard to the letter, the Tenth Circuit concluded that "[t]here is no question that Judge Winner is entitled to immunity for writing the letter to the Justice Department and sending copies to the other law-enforcement officials." Id. at 435. The Tenth Circuit reasoned that Judge Winner had a duty to notify the authorities if he believed a crime was being committed in his courtroom. Id.

Under the New Mexico Code of Judicial Conduct, Judge Clingman as part of his obligation as a judge had a responsibility to take appropriate action if he had information

---

[9]The following day during trial, a mistrial was declared. In an unrelated opinion, the Tenth Circuit determined that retrial on this first criminal charge would violate double jeopardy because the prosecution had made misrepresentations to the defense about a juror being ill in order to obtain Martinez's concurrence in the motion for mistrial. United State v. Martinez, 667 F.2d 886 (10th Cir. 1981).

indicating a substantial likelihood that another judge committed a violation of the Code. NMRA 21-300(D)(1). Thus, while Judge Clingman's conduct in making inquiry of the District Attorney regarding Ms. Busch's plea and in writing a letter to Chief Judge Forbes regarding his concerns that Judge McBee was breaching his ethical duties as a judge may not have been judicial acts in the sense that they involved the adjudication of a dispute between litigants, they were judicial acts for purposes of judicial immunity because they were based on a statutory responsibility imposed on Judge Clingman in his capacity as a judge. See Martinez I, 771 F.2d at 434; cf. In re McBee, 134 P.3d 769. Accordingly, Judge Clingman is entitled to absolute judicial immunity for the conduct on which Ms. Busch's claims are based thereby entitling him to summary judgment.

## II.   JUDGE CLINGMAN IS ENTITLED TO SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY

The defense of qualified immunity is designed to shield public officials from erroneous suits as well as liability and protects all but the plainly incompetent or those who knowingly violate the law. Holland v Harrington, 268 F.3d 1179, 1185 (10th Cir. 2001); Hinton v City of Elwood, Kansas, 997 F.2d 774, 779 (10th Cir. 1993). For this reason, special standards apply to a summary judgment motion raising the defense of qualified immunity. Hinton, 997 F.2d at 779. When a defendant asserts a qualified immunity defense, Plaintiff bears the initial burden of making two showings. Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001); Holland, 268 F.3d at 1185. First, a plaintiff must show that a defendant's alleged actions violated a constitutional or statutory right. Medina, 252 F.3d at 1128. The Court, in determining whether this showing is made, must assess whether the facts, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional or statutory right. Holland,

16

268 F.3d at 1185. If a favorable view of the alleged facts shows the violation of a constitutional or statutory right, the plaintiff must then show that the right was clearly established at the time the allegedly wrongful conduct occurred. Id. at 1186.

>   A.   Judge Clingman is Entitled to Qualified Immunity Because Ms. Busch Has Not Shown the Violation of a Constitutional Right

Ms. Busch alleges that Judge Clingman's conduct violated her civil rights under the Fourteenth Amendment of the Constitution of the United States, deprived her of property by requiring her to expend large sums in attorney's fees, and that Judge Clingman conspired with Judge Forbes to violate her civil rights. Complaint ¶ 39, 40, 43. It is elemental that, in order to succeed on a claim for either a procedural or substantive violation of due process, a plaintiff must show that the actions of a governmental entity or person acting under color of state law deprived her of a protectible property or liberty interest. Hyde Park Co. v. Santa Fe City Council, 226 F.3d 1207, 1210 (10th Cir. 2000).

Ms. Busch makes no showing that she had a protectible property or liberty interest in having her criminal case determined by a particular judge. Even if Ms. Busch could show such an interest, her case was ultimately determined by Judge McBee, the judge of her choice. Thus, she was not deprived of such an interest. Ms. Busch also makes no showing of a protectible property or liberty interest in receiving a sentence to Drug Court for the criminal charges to which she pled guilty. Moreover, even if she had such an interest, she received the sentence she wanted by the judge she wanted such that she was not deprived of any such interest. Very few criminal defendants, if any, having been found guilty of felony trafficking of cocaine and methamphetamine could ever hope to receive the sentence of their choice by the judge of their choice.

Ms. Busch's assertion in her pleadings that Judge Clingman's actions deprived her of a property interest in the attorney's fees she spent challenging Judge McBee's recusal is almost unworthy of the Court's attention.  Ms. Busch is confusing the concept of damages with the concept of a constitutional deprivation of property.  Under Ms. Busch's definition of a deprivation of property, a person would have a collateral due process cause of action every time an attorney was hired to challenge or defend government action and succeeded in that challenge or defense.

Ms. Busch failed to show that she was deprived of any protectible property or liberty interest.  Thus, Judge Clingman is entitled to summary judgment because Ms. Busch failed to show that he violated her rights under the Fourteenth Amendment.

### B. Judge Clingman is Entitled to Qualified Immunity Because Ms. Busch Has Not Shown the Violation of a Clearly Established Right

In order for a constitutional right to be clearly established, the contours of the right must be sufficiently clear such that a reasonable official would understand that his or her conduct is unlawful.  Hyde Park, 226 F.3d at 1210.  A constitutional right is clearly established for qualified immunity purposes when there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains.  Camfield v City of Oklahoma City, 248 F.3d 1214, 1228 (10th Cir. 2001).  There need not be precise factual correspondence between earlier cases and the case at hand.  Hope v. Pelzer, 536 U.S. 730, 739 (2002).  However, there must be earlier precedent that gives an official fair and clear warning that his conduct violates a constitutional right.  Id.  In order to carry her burden, a plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it.  SH.A. v. Tucumcari Municipal Schools, 321 F.3d

1285, 1287 (10th Cir. 2003). Rather, the plaintiff must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity. Romero v. Fay, 45 F.3d 1472, 1475 (10th Cir. 1995).

Even if Ms. Busch had shown the violation of a constitutional right, Judge Clingman would be entitled to qualified immunity because Ms. Busch failed to show that a constitutional right was clearly established by a Tenth Circuit or Supreme precedent or the weight of authority from other circuits such that Judge Clingman would have reasonably known that his conduct was unlawful. Ms. Busch argues that Judge Clingman should have known that his conduct was unlawful because his conduct was based on unsupported gossip,[10] and a judge should know that his assertions must be based on truthful evidence. Ms. Busch then cites to Pierce v. Gilchrist, 359 F.3d 1279, 1293, 1297 (10th Cir. 2004) in support of her argument that it was clearly established that a state actor may not offer fabricated evidence. In Pierce, the plaintiff spent fifteen years in prison for a rape he did not commit. Gilchrist was a forensic chemist who withheld exculpatory evidence and offered fabricated evidence against Pierce at his criminal trial. The Tenth Circuit held that it was clearly established that the use of fabricated evidence violated the plaintiff's due process rights. Id. at 1297.

Even assuming for purposes of this motion that Judge Clingman's inquiry of the District Attorney and his letter to Chief Judge Forbes were based on gossip with no factual or evidentiary basis, Judge Clingman's assertions were not inculpatory or exculpatory in relation to criminal charges against Ms. Busch and were not offered as evidence in Ms. Busch's criminal case. They

---

[10]The "unsupported gossip" to which Plaintiff refers was not viewed as unsupported by the New Mexico Supreme Court which found that the personal relationship between Mr. Proctor and Judge McBee gave, at a minimum, the appearance that Judge McBee was not impartial. In re McBee, 134 P.3d at 770.

were assertions regarding Judge McBee. Ms. Busch points to no Supreme Court or Tenth Circuit case law or any weight of authority from other circuits that even remotely suggests that a judge violates the constitutional rights of a litigant by reporting another judge's potential ethical violations in relation to the litigant's case before that other judge. Accordingly, Judge Clingman is entitled to summary judgment with regard to Ms. Busch's claims because Ms. Busch failed to show the violation of a clearly established constitutional right.

### III.    DEFENDANT JAY W. FORBES

When the Court granted Judge Forbes' Motion to Dismiss on the basis of absolute judicial immunity (Doc. 33), the Court made no ruling on Judge Forbes' additional arguments that Plaintiff Busch failed to state a constitutional violation. For the reasons set forth in this Memorandum Opinion and Order, the Court finds and concludes that, in addition to absolute judicial immunity, Judge Forbes is entitled to a dismissal with prejudice of Plaintiff Busch's claims against him for Plaintiff's failure to allege a constitutional violation. Specifically, assuming the truth of the allegations in Plaintiff's Complaint, Plaintiff failed as a matter of law to identify any specific constitutional right of which she was deprived.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendant Gary L. Clingman's Motion for Summary Judgment (Doc. 43) is hereby GRANTED and all claims against Defendant Clingman are hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that in addition to entitlement to absolute judicial immunity as the Court ruled in its Order of Dismissal of Defendant Forbes with Prejudice (Doc. 33), Defendant Jay W. Forbes is also entitled to a dismissal of all of Plaintiff's claims against him for Plaintiff's failure to allege any constitutional right of which she was deprived.

_____
UNITED STATES DISTRICT JUDGE